## No. 12,767.

CITY OF NEW ORLEANS, MAYOR AND BOARD OF CIVIL SERVICE COMMISSIONERS VS. BOARD OF FIRE COMMISSIONERS.

If there be other points or defences in a case upon which its decision may well turn, the court will pretermit an expression of opinion upon a constitutional question that may have been set up as matter of defence.

The civil service law adopted for the city of New Orleans includes within the scope of the civil service all positions (except that of chief engineer) in the *fire force* only.

It leaves untouched by the civil service other positions not clearly within the meaning of the words "fire force."

As to such other positions the fire board may appoint and promote independently of the civil service.

The position of secretary-treasurer of the fire board held not to be included within the meaning of the term "fire force" as used in the statute.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Samuel L. Gilmore*, City Attorney, (*Howe, Spencer & Cocke* of Council) for Plaintiffs, Appellants.

*E. A. O'Sullivan* for Defendants, Appellees.

*Farrar, Jonas, Kruttschnitt & Gurley* for Moulin, also Defendant and Appellee.

Argued and submitted April 20, 1898.
Opinion handed down June 20, 1898.

The opinion of the court was delivered by

BLANCHARD, J. This is a contest between the Board of Civil Service Commissioners, on the one side, and the Board of Fire Commissioners, on the other side, of the city of New Orleans, over the validity of the appointment of Thomas J. Moulin to the office of Secretary-Treasurer of the Board of Fire Commissioners. See 49 An. 1323.

The question presented is whether Moulin, who is made a party defendant, was legally chosen on the 22d of March, 1897, to the position mentioned.

There is no disputed issue of fact in the case. On the 19th of March, 1897, the then existing Secretary-Treasurer of the Board of Fire Commissioners resigned, and at a regular meeting of the board held on March 22nd Moulin was elected to fill the vacancy. He entered upon the discharge of the duties of the office and still continues to discharge the same.

In May, 1897, the Board of Civil Service Commissioners brought this action, the object of which is to have the election of the said Moulin declared illegal and void as being in contravention of the Civi Service law enacted for the city of New Orleans and made part of the charter of the city adopted in 1896. See Secs. 39 to 67, inclusive, of Act No. 45 of the acts of 1896.

The three members of the Board of Civil Service Commissioners, provided for by the act, who had been appointed by the mayor and confirmed by the council, qualified by taking the oath on the 29th of January, 1897, and partially organized on that day by choosing one of their number President of the Board.

On March 19th—the day the vacancy occurred in the office now in dispute—the Board met and completed its organization by the provisional appointment of a secretary, assistant examiner, stenographer and porter. A motion was then adopted that all positions in the police force, except that of superintendent and "all positions under the Board of Fire Commissioners in the fire force, except that of Chief Engineer * * * are hereby classified and included in the provisions establishing the civil service."

It was next ordered that a communication, which had been prepared, addressed to the Board of Fire Commissioners, relative to the office of secretary-treasurer of said Board, be sent to the latter.

This communication, which bears the date of March 19, 1897, in substance, apprised the Board of Fire Commissioners that the Civil Service Board had organized, had proceeded with the classification of the offices and places of employment in the city, that rules for examinations, appointments and removals, in conformity with the charter, would be forthwith published, and that the Board of Civil Service Commissioners would be ready within fifteen days to examine all applicants for the position of Secretary-Treasurer of the Fire

Board just made vacant by the resignation of the incumbent. It further announced that the position named was subject to classification under the Civil Service law, and could be filled only through that medium and pursuant to the rules and regulations prescribed by the Civil Service Commissioners. In support of its contention that this office was covered by the Civil Service, Sec. 57 of the Charter was cited.

The communication then suggested that if a temporary appointment to fill the vacancy was made necessary by the exigencies of the public business, such temporary appointment could be made by the President of the Board of Fire Commissioners, with the approval of the Board of Civil Service Commissioners, under Sec. 46 of the Charter, such designation, however, to remain in force not exceeding sixty days and only until a regular appointment under Civil Service rules could be made.

The Board of Fire Commissioners, advised that the position of its Secretary-Treasurer was not covered by the terms of the Civil Service statute, proceeded to the election of Mr. Moulin as heretofore stated.

Notwithstanding this the Board of Civil Service Commissioners proceeded on March 31st to give notice of competitive examination for the position of secretary-treasurer of the Fire Board, which notice was duly published, and the examination was held on April 22nd, resulting in the selection of Philo A. Tucker, who was, on May 4th, certified to the Fire Board for permanent appointment as its secretary-treasurer,

The Fire Board replied, reiterating its position that its secretary-treasuryship was not subject to the civil service provisions of the city charter, and that no vacancy existed in said office, Mr. Moulin having been elected two months previously.

This was followed by the present suit.

As a matter of fact, the evidence discloses that the date when the rules and regulations for the government of the Civil Service Commission, in respect to examinations, appointments and removals, were approved was March 24th, that the same were adopted as a whole on March 29th, and published first on April 1st, to take effect, under the law, on April 12th.

The secretary of the Civil Service Board stated as a fact, on the stand, that between the 22d of March (the date of the election of

Moulin) to the 12th of April there were no rules governing examinations, appointments and removals.

The grounds of defence urged against plaintiffs' demand are:

1. The unconstitutionality of those sections of Act 45 of 1890 (city charter), establishing the Board of Civil Service Commissioners, and providing for civil service in the city of New Orleans, in so far as the same purport or assume to regulate, change, alter or amend the constitution, powers and duties of the Board of Fire Commissioners, created by Act No. 83 of 1894, for this, to-wit: That in the particulars aforesaid the said act fails to express its object in its title, and is, therefore, violative of Art. 29 of the Constitution of 1879.

2. That the Board of Civil Service Commissioners was not organized and ready with its list of eligibles when the vacancy to which Moulin was elected occurred; no rules and regulations had been formulated; no classification of the various offices for civil service purposes had been made; no examination had been held; and that, under these circumstances, the Board of Fire Commissioners had the right to take independent action.

3. That the provisions of the act in question, especially Sec. 67, do not apply to the fire department, of which the secretary-treasurer is a member, but to the *fire force* only, which does not include the office aforesaid.

Judgment below was in favor of the defendants, the court holding that at the time of the election of Moulin the law establishing the civil service was not in force, because of the adoption of no rules and regulations and the existence of no eligible list arising from competitive examinations previously had.

Plaintiffs appeal.

With regard to the first defence urged, we do not find it necessary to pass upon the question of unconstitutionality raised. If there be other points in a case upon which their decision may well turn, courts will pretermit an expression of opinion upon a constitutional question that may have been set up as matter of defence.

With regard to the second ground of defence, the one upon which the trial judge determined the case, his position in regard thereto would be absolutely unassailable were it not for the concluding sentence of Sec. 48 of the Act No. 45 of 1890, which reads as follows:

" To prevent the stoppage of public business, or to meet extraordinary exigencies, the head of any department or office may, with

the written approval of the board (of Civil Service Commissioners), make temporary appointment, to remain in force not exceeding sixty days, and only until regular appointments under the provisions of this act can be made.''

Plaintiffs contend that the Civil Service Commission having given notice to the Fire Board of the classification of the office of secretary-treasurer within the civil service, and that within the sixty days an eligible candidate for the vacancy would be presented, the Fire Board was without authority, under the law, to appoint any one to the position for a period exceeding sixty days' duration, and could only appoint for that time with the approval of the Civil Service Board.

An objection to this contention readily suggests itself and raises a doubt of the soundness of the position, and it is this: whether or not what was done on the 19th of March by the Civil Service Commission in regard to classification of offices really amounted to the classification contemplated by Secs. 42 and 48 of the Civil Service law. In other words, had there been a sufficient classification of this office, within the meaning and intent of the law, at the time the vacancy occurred and was filled by the election of Moulin?

But we may leave this question likewise undetermined, since it is not necessary to the decision of the case, the court preferring to rest its affirmance of the judgment below on the third and last ground of defence urged.

Section 67 of the act under review declares: ''The powers and duties of the Board of Fire Commissioners shall remain as now prescribed by law, except that all appointments and promotions *in the fire force* (except that of chief engineer) shall be in accordance with and subject to the provisions of Secs. 39 to 64, inclusive, and to the rules and regulations prescribed by the Board of Civil Service Commissioners; in all other respects the authority of said board shall remain undisturbed.'' (Italics ours.)

Prior to the enactment of this law, the Fire Board had the exclusive and independent appointment of all of its employees, including promotions. The new law extended, in the main, over the operations of the Board, in respect of appointments and promotions, the sheen or the shadow, according as it may be viewed, of the civil service, but not entirely. It includes within the scope of the civil service all positions (except chief engineer) '' *in the fire force*'' only, and leaves

untouched by the civil service other positions not clearly within the meaning of the words "in the fire force." As to such other positions, the Fire Board could appoint and promote independently of the civil service.

The practical interpretation to be given to the words "fire force," as used in the statute, excludes the secretary-treasurer of the Board. He is the clerical and financial employee of the Board. He is in this sense a part of the Board itself. He keeps its minutes, attends to its office affairs, its correspondence, receives, safely keeps and disburses its funds, and gives bond conditioned for the faithful performance of such duties. He is required to keep his office open from 9 A. M. to 4 P. M. each day, except Sundays and legal holidays. He is not on duty otherwise. He has nothing to do with the extinguishment of fires; is not required at all to attend fires; does not have to report to those charged with such duties. He wears no uniform or other insignia to distinguish him as a member of the fire force. He is in no sense a part of the fire force in the common acceptation of that term. When one speaks of the police force, or fire force, he is usually understood to refer to the body of officers and men stationed about the city, in the one case, to preserve order and protect life and property, and, in the other case, to be on the alert for announcement of fires and conflagrations occurring, move rapidly to the scene of the same, with fire engines, hose, hooks and ladders, trucks and other equipment, and there, under the discipline and command of trained leaders, designated for the purpose, seek to subdue and extinguish the conflagration. The Board of Police Commissioners, in the one case, and the Board of Fire Commissioners, in the other, are not of the police force, or fire force, in this sense. Neither is the secretary-treasurer of the latter Board.

The words of a law are to be understood in their most usual signification, and they are to be invested with such meaning as is implied in their general and popular use. C. C. 14.

The "fire force," in the popular sense of the phrase, includes the chief and assistant chief of the fire department, the engineers, captains, lieutenants, drivers, strokers, tillermen, pipemen, firemen, etc. They are required to wear the prescribed uniform when on duty, and when not on duty to wear some distinguishing badge by which they are known as members of the force. They are mustered

into companies, and the men are subject to the orders of the captains of their respective companies, and other superior officers, both at their houses and at fires. All this force, except the chief engineer, is made subject, as respects appointment and promotion, to the civil service rules and regulations.

The secretary-treasurer of the Fire Board was not mentioned as excepted from the operation of the law for the reason that there was no necessity for naming him as excepted. Not coming within the definition of the term "fire force," he was never *included* to be excepted.

We hold him to be a ministerial officer of the Fire Board, not a member of the fire force, as that term is understood, and, therefore, not within the grasp of the civil service established for the city of New Orleans.

Judgment affirmed.